## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD YOUNG, | : | Civil No. 3:26-cv-1177 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| JUDGE SCOTT A. ZEIGLER, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the Court is a civil rights complaint pursuant to 42 U.S.C. § 1983 filed by Leonard Young ("Young")[1], a pretrial detainee confined at the State Correctional Institution, Mahanoy, Pennsylvania ("SCI-Mahanoy"). (Doc. 1). Named as Defendants are Judge Scott Zeigler, Snyder County, and John and Jane Doe ("Manager[s] of Snyder County"). (*Id.* ¶¶ 4-5). Young alleges that she is being unlawfully held as a pretrial detainee at SCI-Mahanoy.

The complaint is presently before the Court for preliminary screening pursuant to 28 U.S.C. § 1915A(a). For the reasons set forth below, the complaint will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 28 U.S.C. §§ 1915A(b)(1), (b)(2).

---

[1] Young self-identifies as a female and uses "she/her" pronouns. (Doc. 1 ¶ 7). The Court thus refers to Young as she/her.

## I.    Allegations of the Complaint

On December 2, 2025, Young was taken into custody in Snyder County on charges of aggravated assault, simple assault, criminal mischief, recklessly endangering another person, disorderly conduct, harassment, reckless and careless driving, and driving with operating privileges suspended or revoked.  (Doc. 1 ¶ 9; *see also Commonwealth v. Young*, CP-55-CR-0000034-2026 (Ct. Com. Pl. Snyder Cnty.)).  Young alleges that Snyder County does not have a prison to house pretrial detainees.  (Doc. 1 ¶ 11).  She thus alleges that Snyder County uses other county facilities to house its detainees.  (*Id.*).  Young asserts that due to her mental health status, she "was hard to place into these county jails."  (*Id.* ¶ 12).

On February 9, 2026, Young appeared before Judge Zeigler for a preliminary hearing, and he allegedly "referred the matter to [a] higher court" and made an inappropriate statement about the case.  (*Id.* ¶¶ 13, 30).

On February 27, 2026, Snyder County guards transported Young to SCI-Mahanoy "without any explanation."  (*Id.* ¶ 14).  Young alleges that she is housed in the Restricted Housing Unit ("RHU") at SCI-Mahanoy and is "being held against her will."  (*Id.* ¶¶ 15, 23).  In the RHU, Young alleges that she has no access to a telephone, limited access to the law library, and limited recreation time.  (*Id.* ¶¶ 20-21, 24).  She further alleges that she is housed with convicted prisoners and is "terrified to come out [of her] cell around these convicted prisoners."  (*Id.* ¶ 25).  The convicted prisoners allegedly believe that Young is a "rat, cop, or snitch" because she is housed in the RHU without any documentation.  (*Id.*).

2

Young alleges that officials at the Pennsylvania Department of Corrections ("DOC") advised her that "the County of Snyder deems you need more custody confinement than they can provide and you will be here until you are convicted per Snyder County orders." (*Id.* ¶ 26).

Young claims that she "has no legal remedy to exhaust" and has not exhausted her administrative remedies. (*Id.* ¶ 29).

For relief, Young seeks release from DOC custody[2], declaratory and injunctive relief, compensatory, punitive, and nominal damages, and costs associated with litigating this action. (*Id.* ¶¶ 34-39).

## II.    **Legal Standards**

### A.    Screening of Complaints

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), authorizes a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. *See* 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b).

---

[2]    To the extent that Young desires release from custody, she cannot obtain it in a Section 1983 action but must instead seek a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

This initial screening is to be done as soon as practicable and need not await service of process. *See* 28 U.S.C. § 1915A(a).

In dismissing claims under §§ 1915(e)(2) and 1915A, district courts apply the standard governing motions to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Smithson v. Koons*, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) (stating "[t]he legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Federal Rule of Civil Procedure 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

4

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

5

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

Because Young proceeds *pro se*, her pleading is liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

B.    Section 1983

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

6

injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III.    Discussion

### A.    Exhaustion of Administrative Review

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983…by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Stated differently, the exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding their prison conditions.  *See Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018); *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006))); *Jones v. Bock*, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); *Booth v. Churner*, 532

7

U.S. 731, 733-34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (alteration in original) (quoting *Woodford*, 548 U.S. at 88). "These procedural rules are supplied by the individual prisons." *Downey*, 968 F.3d at 305 (citations omitted); *see also Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim...is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"); *Jones*, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim"); *Woodford*, 548 U.S. at 90 (indicating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). A prisoner's failure to follow a prison's procedural rules will result in a procedural default of their claims. *See Spruill*, 372 F.3d at 230-32 (concluding that PLRA's exhaustion requirement includes procedural default component); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010) (pointing out that *Spruill* held "that the PLRA includes a procedural default component and the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures"). A procedural default may be

8

excused, however, if the prisoner can show that the administrative remedies were unavailable to them. *See Rinaldi*, 904 F.3d at 266 ("The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'" (quoting *Woodford*, 548 U.S. at 93)). "Available means capable of use; at hand." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (internal citations and quotation marks omitted). "An administrative remedy is unavailable when it 'operates as a simple dead end[,]...is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey*, 968 F.3d at 305 (alterations in original) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271.

This Court can sua sponte dismiss a complaint if a Section 1983 plaintiff concedes they failed to exhaust in their complaint. *Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (explaining that *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000) and *Nyhuis v. Reno*, 204 F.3d 65, 69 (3d Cir. 2000) both involved plaintiffs who "explicitly conceded their failure to exhaust administrative remedies," and the dismissals of the complaints in both cases "would...fall within a district court's inherent power to dismiss sua sponte a complaint which facially violates a bar to suit"); *see also Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024)

9

("[W]here a prisoner's failure to exhaust under the PLRA is 'apparent from the face of the complaint,' a district court may dismiss it on that basis." (quoting *Ray*, 285 F.3d at 297)).

Young concedes in her complaint that she did not exhaust her administrative remedies prior to bringing the instant action. (Doc. 1 ¶ 29). She does not assert that the grievance procedure was unavailable to her or that prison officials thwarted her attempt to exhaust. The PLRA requires exhaustion prior to the initiation of a plaintiff's claims in federal court. Because it is obvious from the face of the complaint that Young failed to exhaust her administrative remedies, sua sponte dismissal of this action is appropriate.

In addition to Young's failure to exhaust the available administrative remedies, her claims fail on several other grounds, as set forth below.

### B.    Claims Against Judge Zeigler

Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally…'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Young's claims against Judge Zeigler are based on his actions in his judicial capacity in presiding over Young's criminal proceedings.  Accordingly, Judge Zeigler enjoys absolute immunity from suit and Young's claims must be dismissed under § 1915(e)(2)(B)(iii) and § 1915A(b)(2).

C.    Housing/Classification Claim

The crux of Young's claim is based on being housed, as a pretrial detainee, with sentenced inmates.

A pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Rather, he or she may only be detained "to ensure his presence at trial," and he or she "may [be] subject[ed] to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment." *Id.* at 536-37.  "If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective…it does not, without more, amount to punishment." *Southerland v. Cnty. of Hudson*, 523 F. App'x 919, 921-22 (3d Cir. 2013).

Institutional security and effective facility management are valid governmental objectives that can justify restrictions on pretrial detainees. *See Bell*, 441 U.S. at 540.  Such measures are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence…to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their

11

expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23; *see also Sandin v. Conner*, 515 U.S. 472, 482-83 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.").

Further, "the Due Process Clause does not mandate that…officials use the *least* restrictive means available to accomplish their non-punitive objective." *Steele v. Cicchi*, 855 F.3d 494, 506 (3d Cir. 2017) (citing *Bell*, 441 U.S. at 542 n.25; emphasis in original). "Indeed…'[g]overnmental action does not have to be the only alternative or even the best alternative for it to be reasonable, to say nothing of constitutional.'" *Steele*, 855 F.3d 494, 506 (quoting *Bell*, 441 U.S. at 542 n.25). "The central question," therefore, is whether Young has "sufficiently alleged that the conditions of [her] pretrial confinement constituted 'punishment.'" *Southerland*, 523 F. App'x at 921-22. The Court concludes that she has not.

At most, Young alleges that she is afraid to leave her cell and afraid to interact with the sentenced inmates. However, she does not allege that any particular sentenced inmate has assaulted her. Nor does she allege that she was injured. Moreover, Young does not allege that the Defendants acted with deliberate indifference to the risk that she might suffer serious harm. Young does not have a protected liberty interest in her security classification or housing preference. *See, e.g.*, *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007) ("pretrial detainees do not have a liberty interest in being confined in the general population").

The Third Circuit has explained that "the ultimate question under *Bell* is whether a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) (quotations omitted). A detainee's security classification and resulting housing placement is related to the valid government objective of maintaining institutional security, and a detainee's criminal history is relevant to his or her security classification. Young asserts that she "was hard to place into [the] county jails" due to her mental health status and that she requires more care than the county facilities can provide. (Doc. 1 ¶¶ 12, 26). She thus acknowledges that her housing placement was due to, among other things, her history of mental health problems.

In sum, Young has not plausibly alleged that her housing assignment was arbitrary or a purposeless restriction on her liberty, or so excessive as to result in unconstitutional punishment. As such, the Court will dismiss this claim.

D.    Isolation/Limited Access to Individuals

The Due Process Clause affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), and is violated when a pretrial detainee is subjected to punishment that is not reasonably related to a legitimate governmental objective. *See Hubbard*, 538 F.3d at 236. The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*,

621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates").

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (cleaned up). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991).

14

Young alleges that her placement in the RHU is unconstitutional because she has little interaction with other individuals "aside from staff and guards." (Doc. 1 ¶¶ 20-21, 24). However, she does not allege the amount of time she had limited interaction with other individuals and does not allege that she was subjected to excessive isolation, or any isolation at all. (*See id.*). In short, Young has not plausibly alleged a conditions of confinement claim.

A short period of lockdown with resulting isolation, without more, is not a serious deprivation. *Clark v. Coupe*, 55 F.4th 167, 183 (3d Cir. 2022) ("Despite the threat of harm posed by isolation, we recognize that solitary confinement does not per se violate the Constitution as long as the conditions of confinement are not foul, inhuman or totally without penological justification.") (quotations and citation omitted); *Miller v. Metzger*, 2022 WL 4820322, at *2 (3d Cir. Oct. 3, 2022) ("To the extent that Miller's claim arose out of his relatively short-term confinement in isolation and subsequent [one-year] placement in the [Security Housing Unit], such confinement does not, standing alone, constitute cruel and unusual punishment.").

To the extent Young alleges that the deprivation was sufficiently serious—amounting to an inhumane condition—because she was suffering from a mental condition while in the RHU, she has not provided a sufficient factual basis. She does not provide sufficient details about her condition during the relevant time, such as symptoms, treatment, or medication. Thus, Young has not adequately alleged the objective component of the conditions of

confinement claim.  Young has also failed to sufficiently allege the subjective component—

that prison officials acted with deliberate indifference to her health or safety.  Instead, her

allegations imply that her safety—a legitimate governmental objective—was the reason for

her placement in the RHU.

Accordingly, the Court finds that Young failed to plausibly allege a constitutional

violation on the grounds that she was subjected to unconstitutional conditions of

confinement; thus, her due process claim on this ground will be dismissed.

E.    Limited Access to Law Library, Recreation, and Telephone

First, Young alleges that she had limited access to the law library.  (Doc. 1 ¶ 21).

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the

courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).  "A prisoner making an access-

to-the-courts claim is required to show that the denial of access caused actual injury."

*Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v.*

*Casey*, 518 U.S. 343, 350 (1996)).  This is because the right of access to the courts "rest[s]

on the recognition that the right is ancillary to the underlying claim, without which a plaintiff

cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S.

403, 415 (2002).  In other words, a prisoner claiming that he or she was denied access to

the courts must allege an injury traceable to the conditions of which he or she complains.

*See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of

denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in

16

underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415; *see also Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014) ("[T]o sufficiently plead an access-to-courts claim…a non-prisoner must plead that 'official acts…may allegedly have caused the loss…of a meritorious case.'" (quotation omitted)).

Furthermore, the right to access the courts may be satisfied if the pretrial detainee had an attorney "because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" *Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam) (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)).

Young's access-to-courts claim fails. She does not allege an actual injury due to her alleged inability to access the law library to the extent she pleases. She also does not allege that any "nonfrivolous" or "arguable" claim or defense in her pending legal matters were lost because of his inability to access the law library. Young's general allegations are not sufficient to state a plausible claim for relief. *See Prater*, 542 F. App'x at 137 (affirming denial of access-to-courts claim where the pretrial detainee had "not offered any other explanation of how his inability to access the library affected his criminal proceedings"); *Diaz*, 532 F. App'x at 63 (affirming dismissal of access-to-courts claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).

Second, Young's complaints that she does not have sufficient recreation time does not constitute "punishment" that amounts to a constitutional violation. *See, e.g., Fortune v.*

17

*Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days.  Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise.").

Third, Young alleges that she had no access to a telephone "to gain support with family[ ] [and] friends."  (Doc. 1 ¶ 20).  "[P]risoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights."  *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (rejecting First Amendment claim based on telephone restrictions where inmate "makes no assertion—and there is no evidence—that he lacked alternative means of communicating with persons outside the prison") (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)).  "Rather, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'"  *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *see also Randall v. Cnty. of Berks, Pennsylvania*, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (explaining that "[a] pretrial detainee's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution" (internal quotations omitted)).  Accordingly, these conditions of confinement claims will be dismissed.

F.    Compensatory and Punitive Damages

The PLRA prohibits compensatory damages for "mental or emotional injury suffered while in custody" absent "a prior showing of physical injury." 42 U.S.C. § 1997e(e); *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000). More than a *de minimis* physical injury must be alleged. *See Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003). Here, Young seeks damages for mental suffering. (Doc. 1 ¶¶ 19, 36). She does not, however, allege that she suffered a physical injury. Thus, as pled, the complaint does not support a claim for compensatory damages.

Additionally, the Court concludes that Young cannot recover punitive damages against the Defendants in their official capacities under Section 1983. A claim against a county employee in his or her official capacity is the functional equivalent of a claim against the county itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits...'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690, n. 55 (2018)). The United States Supreme Court has long recognized that punitive damages are not recoverable against a municipal defendant under Section 1983 and, as a result, Young cannot recover punitive damages against Snyder County and John and Jane Doe—alleged employees of Snyder County—in their official capacities. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Mitros v. Borough of Glenolden*, 170 F. Supp. 2d 504, 508 (E.D. Pa. 2001).

## IV.    Leave to Amend

The Court recognizes that the sufficiency of this *pro se* pleading must be construed liberally in favor of Young. *See Erickson*, 551 U.S. 89. The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). Consequently, a complaint should not be dismissed with prejudice for failure to state a claim without granting leave to amend, "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Based on the nature of the allegations, and because Young admittedly failed to exhaust her administrative remedies prior to initiating this action, the Court finds that affording Young leave to amend would be both futile and inequitable.

## V.    Conclusion

The Court is confident that service of process is unwarranted in this case, and the complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii) and 28 U.S.C. § 1915A(b)(1), (b)(2). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May _____, 2026